SMITH v. WOOD. (No. 2730.)

(Court of Civil Appeals of Texas. Texarkana. May 8, 1923. Rehearing Denied June 7, 1923.)

1. **Judgment** ⬡713(3)—**Judgment in former suit between grantors of parties not determining location of boundary lines held not res judicata.**

Where, in trespass to try title, the controversy was as to location of boundary lines, such question not having been determined in a former suit between the respective grantors of the parties, the judgment therein was not res judicata.

On Appellant's Motion for Rehearing.

2. **Boundaries** ⬡32—**Pleadings construed to raise issue as to location of boundary lines.**

Pleadings in trespass to try title *held* to raise issue as to location of boundary line and not to title alone.

Appeal from District Court, Van Zandt County; Joel R. Bond, Judge.

Trespass to try title by J. F. Smith against Grover Wood. From judgment for defendant, plaintiff appeals. Affirmed.

According to the allegations in his petition filed August 4, 1919, appellant's suit against appellee, as stated in the opinion disposing of a former appeal thereof (229 S. W. 583), "was to try the title to 101½ acres of the John Glover survey in Van Zandt county; but as tried it was to recover 15 of the 101½ acres, which appellee claimed to own." The last trial, as was the former one, was to the court without a jury; and he found, as he did in the former one, facts as follows: That the 101½ acres was the north half of a tract of 203¾ acres; that in 1885 the 203¾ acres was divided into two moities, and that the north half thereof was conveyed to E. V. Hall, under whom appellant claimed title, and the south half to Frank Gurecky, under whom appellee claimed, and that Hall then took possession of the part held by appellant, his grantee, at the time of the trial, and Gurecky took possession of the part held by appellee, his grantee, at the time of the trial; that more than 10 years before the suit was commenced appellee and those under whom he claimed title fenced and cleared the 15 acres in controversy and thereafter had and held "continuous, peaceable, adverse and uninterrupted possession" thereof, "claiming same as their own"; that on August 9, 1913, Hall and Gurecky joined each other as plaintiffs in a suit (numbered 3433) against "unknown owners," to remove cloud from the 203¾ acres; that the petition of Hall and Gu-

recky in that suit contained a statement as follows:

"These plaintiffs make known to the court that they disclaim any title to or interest in the remaining part of the said John Glover survey other than the respective interest of these several plaintiffs, which is hereinbefore specifically described."

That in said petition the land Gurecky claimed was described by metes and bounds not including the 15 acres in controversy, and the land Hall claimed was described by metes and bounds including said 15 acres; that in that suit there was no controversy between Hall and Gurecky as to the ownership of the 15 acres; that on August 23, 1913, judgment was rendered in said suit quieting the title of Hall and Gurecky to the parts respectively claimed by them as against the defendants therein; that said judgment did not disturb the possession of either Hall or Gurecky to the land then held by him, and that such possession was never afterwards disturbed until this suit was commenced by appellant; and that the line between the north and south portions of the 203¾ acres was "as now indicated by the fence dividing the two tracts is the south boundary line of plaintiff's tract and the north boundary line of the defendant Wood's tract."

On the last trial the court further found as follows: That neither Hall nor Gurecky, plaintiffs in said suit No. 3433, intended to put in issue therein the title to the 15 acres as between themselves, neither of them authorized the attorneys who represented them in that suit to "embody in their joint petition a disclaimer of title to said 15 acres," and neither of them intended to "disturb the title or possession" of Gurecky to the 15 acres; that more than 10 years before the filing of the petition in said suit No. 3433 appellee and those under whom he claimed title had fenced and cleared the 15 acres and thereafter had and held continuous, peaceable, adverse, and uninterrupted possession thereof, using, claiming, and enjoying the same as their own; and that the division line, referred to above as indicated by a fence, was the line established between the co-owners of the 203¾ acres at the time they divided same in 1885, and "was the agreed boundary line between the persons who then owned the 203¾ acres" and their vendees of the respective parts thereof held by appellant and appellee until the institution of this suit.

On the facts he had found the court concluded as matters of law that title to the 15 acres in controversy vested in appellee's grantor by the partition of the 203¾ acres made in 1885; that appellee's disclaimer of claim or title to the 15 acres in the joint petition filed by him and Hall in suit No.

3433 in 1913, and the judgment in that suit, did not affect the title then in him to the 15 acres; that "the division line as run in said partition," quoting, "and as it now exists upon the ground is the south boundary line of the land owned by plaintiff (appellant) and the north boundary line of the land owned and claimed by defendant (appellee) at the time this suit was instituted, and that said division line has been established by long use and acquiescence of all parties interested"; and that appellee was entitled to recover the 15 acres "under his plea and proof of more than 10 years' continous, peaceable, and adverse claim, use, and occupancy under fence next preceding the filing of the original petition in cause No. 3433." The court having accordingly rendered judgment in appellee's favor for the 15 acres (mentioned in the judgment as 18 acres), appellant prosecuted this appeal.

Stanford, Sanders & West, of Canton, for appellant.

Wynne & Wynne and A. L. Tisdale, all of Wills Point, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The court below found that the 15 acres in controversy was a part of the 101½ acres decreed to Hall (appellant's vendor) in 1913, in suit No. 3433. Appellant's contention is that the judgment therefore should have been in his favor for the 15 acres, notwithstanding appellee's vendors had acquired title thereto by force of the 10 years' statute of limitations before the decree in said suit No. 3433 was rendered. The contention is predicated upon the view that as between appellant and appellee the decree in suit No. 3433, unless and until set aside in a proceeding for that purpose, was conclusive of the fact that the former owned the 15 acres.

We would be inclined to think the contention should be sustained and the judgment reversed but for the further finding of the court (which is not in any way attacked by appellant) that the line agreed upon in 1885 between the then owners of the 203¾ acres, according to which the 15 acres belonged to appellee's grantors, "was the agreed boundary line between said owners and their vendees of the respective parts thereof held by appellant and appellee until the institution of this suit."

The issue made by the pleadings in suit No. 3433 was as to title only, and the judgment did not determine the location on the ground of the tracts adjudged to the respective parties. In this case, as tried, appellant did not question the title of appellee to the land adjudged to his grantor in suit No. 3433, and appellee did not question the title of appellant to the land adjudged to his grantor in that suit. The real controversy was as to the location on the ground of the boundary line between the tracts they respectively owned. As that was a question not determined in suit No. 3433, the judgment therein was not res adjudicata between the parties. Benavides v. State (Tex. Civ. App.) 214 S. W. 568. Therefore the court below had a right to determine it without reference to that judgment. There was testimony that the location of the boundary line was uncertain in 1885, when, the court found, appellant's and appellee's grantors, respectively, agreed on its location. There was no testimony that the location of the true line was ever thereafter before the institution of this suit less uncertain, and the finding, as stated above, was that the vendees (among whom were appellant and appellee) of the parties who agreed on the line in 1885 agreed, until this suit was instituted, that the line so established was the boundary line. If the uncertainty as to the true location of the line existed at the time and after the judgment in suit No. 3433 was rendered, there can be no doubt about the right of the then owners of the land, whether their grantors had ever done so or not, to establish the boundary line between them. If they could have done that, they certainly could have agreed, as the court found they did, that the line established by their grantors was the boundary line between their respective tracts of land.

The judgment is affirmed.

## On Appellant's Motion for a Rehearing.

[2] It is insisted that the issue between the parties was as to title alone, and that in disposing of the appeal on the theory that the controversy was as to the location on the ground of the boundary line between the tracts the parties respectively owned, this court rested its decision "on an issue neither claimed, pleaded or thought of by either party to the suit." Evidently appellant did not have in mind his own pleadings and those of appellee when he made the charge.

In his petition, after describing the 101½ acres he sued for by metes and bounds, appellant alleged that—

"One of the calls is left out of the south line of said land, and a mistake is made in the description of his said land, and his boundaries are not perfect as between him and the defendant Grover Wood."

And he prayed that he "have judgment for his land and premises and for a writ of possession, and further prays for a decree establishing his said boundary line and fully determining the same as between himself and the said Grover Wood."

In his answer appellee disclaimed as to all the land sued for, except the part thereof included "inside of his inclosure," and alleged that those under whom he and appellant claimed "long prior to the acquiring of title

by this plaintiff and this defendant, by their ancestors in title, had agreed on the boundary line between the two tracts in controversy in this suit, and had divided said land, placing the boundary line between said tracts where the partition fence now runs dividing said tracts; that defendant's and plaintiff's ancestors in title have recognized said line for more than 20 years, and have used, cultivated and enjoyed, cleared and worked the land on each side of said agreed partition for more than 20 years, and that this plaintiff is now estopped from asserting an adverse title as against said agreed partition," and further alleged that—

"In about 1912 or 1913, plaintiff's ancestors in title and the defendant's immediate ancestors in title brought a friendly suit to remove cloud from the title by reason of the outside apparent interest of some old heirs, each of whom recovered in said suit the lands as described in their respective deeds, both the plaintiff's and defendant's and subsequent to said judgment, it having been ascertained between plaintiff's ancestors in title and defendant's ancestors in title that the boundary line established by the said survey should be the agreed boundary line, and that plaintiff's ancestors in title were to own all the land on his side of said agreed boundary line, and the defendant's ancestor in title was to own all the land on his side of said boundary line, and that each of said joint owners recognized the ownership of the other in said lands, and relying upon said agreements they improved, used, cultivated and enjoyed the lands on each side of said agreed boundary, and that he, the plaintiff, is now estopped from asserting any kind of title as against said agreed partition. Further, defendant charges that neither of the deeds of the defendant's ancestor in title describe any land that can be identified on the ground by a competent surveyor. That the field notes are ambiguous, both in plaintiff's deed and defendant's deed, but the boundary line as has been recognized for more than 20 years dividing said land was agreed to and accepted by plaintiff's immediate ancestor in title and defendant's ancestor in title, and is now the true boundary line, and this plaintiff is estopped from asserting title to any of the defendant's land or altering or changing the agreed boundary."

The motion is overruled.